## In Re Anonymous No. 28 D.B. 85

Disciplinary Board Docket No. 28 D.B. 85.

TUMOLO, *Member*, May 22, 1986—Pursuant to Rule 208(d) of the Pennsylvania Rules of the Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above petition for discipline.

## I. HISTORY OF PROCEEDINGS

This petition for discipline was filed on April 10, 1985, alleging violations of:

a. D.R. 1-102(A)(4), dealing with conduct involving dishonesty, fraud, deceit, or misrepresentation;

b. D.R. 1-102(A)(5), prohibiting an attorney from engaging in conduct that is prejudicial to the administration of justice;

c. D.R. 1-102(A)(6), dealing with conduct that adversely reflects on an attorney's fitness to practice law; and,

d. D.R. 7-106(A), prohibiting an attorney from disregarding a ruling of a tribunal made in the course of a proceeding.

The matter was assigned to hearing committee [     ]. The committee held a prehearing conference on May 24, 1985, to determine the admissibility of a plea of nolo contendere to a single count of uttering a forged instrument in the State of [Z]. The issue raised by respondent at the prehearing conference was that Rule 214 of the Pennsylvania Rules of Disciplinary Enforcement provides as follows:

"Rule 214. Attorneys convicted of crimes.

a. Upon the filing with the Supreme Court of a certified copy of an order demonstrating that an attorney has been convicted of a crime which is punishable by imprisonment for one year or upward in this or any other jurisdiction . . . the court may enter

an order immediately suspending the attorney, whether *the conviction* resulted from a plea of guilty or nolo contendere or from a verdict after trial or otherwise, pending final disposition of a disciplinary proceeding to be commenced upon such conviction.

b. A *certificate of conviction* of an attorney for such a crime shall be conclusive evidence of the commission of the crime in any disciplinary proceeding instituted against the attorney based upon the conviction." (Emphasis added.) However, in [Z] a nolo contendere plea does not result in an adjudication of guilt, and accordingly, there is no conviction or final judgment. Thus, this respondent was placed on a period of probation without a judgment of guilt. Accordingly, the Supreme Court of Pennsylvania did not enter an order immediately suspending respondent. And respondent raised the issue of whether his plea of nolo contendere in [Z] was admissible for any purpose in the disciplinary proceeding in Pennsylvania. The hearing committee admitted the plea of nolo contendere, but found as a matter of law that it was not conclusive evidence of a violation of the Code of Professional Responsibility.

The hearing committee conducted a formal hearing on the disciplinary charges on July 30, 1985. Nearly all of their findings of fact and those hereinafter set forth are the result of a stipulation between the parties. This was an important consideration for the board since the underlying offense related to the plea of nolo contendere is therefore stipulated to.

After the hearing committee found a prima facie case against respondent for violation of the above-cited disciplinary rules, he presented the testimony of two attorneys during the dispositional stage of the hearing which was directed to the type of discipline

to be imposed. These colleagues in the [ ] County Bar Association testified as to respondent's community service and good character.

At the close of proceedings, both petitioner and respondent agreed that some form of public discipline was merited. Petitioner recommended no less than a one-year suspension, while respondent argued that under all of the facts, a public censure was appropriate. The hearing committee recommended to the Disciplinary Board that respondent be suspended for the period of six months.

Respondent filed a brief on exceptions and requested oral argument. In those exceptions, respondent found error in the committee's admission into evidence of respondent's plea of nolo contendere since no adjudication of guilt in the [Z] criminal proceeding was ever entered. Respondent further asserted that it was error in the portion of the proceeding directed to the type of discipline to be imposed to have admitted into evidence a letter from respondent to Judge [A], who presided over the [Z] criminal proceeding (Petitioner's Exhibit 16). And finally, respondent charged error in admitting into the record two previous informal admonitions given to and accepted by respondent pursuant to the informal administration of complaints under the Pennsylvania Rules of Disciplinary Enforcement and the Rules of the Disciplinary Board.

## II. FINDINGS OF FACT

1. Petitioner, whose principal office is located at 300 North Second Street, Harrisburg, Pa., is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement (hereafter Pa. R.D.E.), with the power and the duty to investigate all matters involving alleged misconduct of an attorney ad-

mitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

2. Respondent, [   ], Esq., was born in 1951, admitted to practice law in the Commonwealth of Pennsylvania in 1977, and his office is located at [   ].

3. In association with [B], an attorney practicing in [C], [Z], respondent represented the interests of the trustee and beneficiaries of a recreation lease trust in litigation instituted in the [   ] County, [Z] Circuit Court in about 1981, involving the validity of a condominium recreation lease and the liability of the condominium association for unpaid rent.

a. Both attorney [B] and respondent were counsel of record for an original defendant, the trustee who was acting on behalf of the aforementioned beneficiaries in administering the recreation lease.

b. Respondent became entitled to represent the investors pro hac vice in the [Z] court through his association with [B].

c. A small minority of the trust beneficiaries sided with plaintiffs in attempting to have the lease declared invalid.

4. A decision favorable to the client(s) of respondent and [B] was subseqently entered by the circuit court, which resulted in a declaration that the lease was enforceable and in an order on defendant's countercliam that the condominium association pay rent arrearages and interest.

5. The circuit court decision was unsuccessfully appealed by the condominium association.

a. In this regard, a mandate from the [Z] appellate court was forwarded to the circuit court in early December, 1983, rendering the judgment final.

b. On or about January 31, 1984, the condominium association deposited an amount in excess of $190,000 into the circuit court registry in satisfaction of the judgment plus interest. Following said deposit, the record was marked satisfied.

c. As of January 31, 1984, the circuit court still had pending before it various unresolved motions from plaintiff(s) and defendant(s) concerning distribution of the judgment proceeds and collection of additional rent from the plaintiff(s).

6. With regard to said monetary recovery, a stipulation was entered on February 1, 1984, by respondent and [B], as counsel for the trustee, and [D], attorney for a minority investor who had intervened in the litigation.

a. The stipluation required that the proceeds of said judgment were to be "deposited in an interest bearing [sic] account in the [E] Bank in [C] in the name of [F], trustee, to be distributed only upon order of the court."

b. The stipulation further provided ' "It is the intent of the parties that any future proceeds of the sale of the lease and underlying fee herein be distributed under the same conditions. [sic]"

c. On the same date, the [ ] County Circuit Court, per Judge [G], ordered that said stipluation was approved.

7. Said judgment proceeds were promptly divided and deposited into three separate investment accounts at [H] Bank (of [C]), [E] Bank, and First National Bank of [C].

a. The judgment proceeds were deposited into the three separate [Z] banks, vis-a-vis a single deposit into [E] Bank, so as to assure FDIC insurance guarantee protection.

b. By the terms of the separate depositers' agreements for each account, three signatures were re-

quired for any withdrawal of funds, i.e., respondent's signature and the signatures of [F] (the trustee) and [B].

c. Moreover, pursuant to the consent order of February 1, 1984, no withdrawal was to occur absent further court order.

8. From the date of execution of the consent order of February 1, 1984, and through the hearing on a motion to release the funds filed by [B] and respondent on May 29, 1984, respondent's actions were consistent with recognition of the validity of the consent order.

a. A hearing was held on respondent's motion to release the funds on June 11, 1984.

b. The circuit court did not make a definitive ruling on the motion but took the matter under advisement.

9. On or about June 13, 1984, respondent purchased from each of the [Z] banks a cashier's check payable to his trust account by issuing a check from the corresponding court-ordered investment account at each bank.

a. The respective withdrawals made by respondent in this manner were as follows: [H] Bank — $20,653.68; [E] Bank — $75,585.10; and First National Bank of [C] — $75,585.10. These withdrawals represented approximately 80 percent of the funds originally deposited in each account.

b. These withdrawals were made without authorization or knowledge of the court.

c. These withdrawals were likewise made without authorization or knowledge of [B] or [F].

10. [F] had presigned each of the checks used by respondent to remove the funds from the investment accounts in [Z] because [F] was to be on vacation for a substantial part of June, 1984, and re-

spondent had indicated to him that release of the funds by the court was possible during this time.

11. In order to meet the three-signature withdrawal requirement of each depositors' agreement, respondent placed the purported signature of [B] on each of the three checks used to remove the money from the [Z] investment accounts without the authorization or knowledge of [B].

12. Respondent uttered the three checks from the respective [Z] banks, knowing that said checks included the false signature of [B] and that the conditions under which [F] would have permitted negotiation of the presigned checks had not occurred.

13. Respondent promptly deposited said cashiers checks into his Pennsylvania trust account, where the funds remained until respondent transferred the total amount ($171,823.88) into a special interest-bearing escrow account with [I] Bank in [    ], Pa., designated "[Respondent], Atty. Escrow Account for [J]," on or about July 11, 1984.

14. On or about early July, 1984, upon receipt of a periodic bank statement, [B] learned of the removal of the judgment proceeds from the [Z] banks.

a. On July 3, 1984, [B] filed a motion for court-ordered instructions regarding recovery of such funds.

b. On July 6, 1984, the [Z] Circuit Court held a hearing which resulted in an order of the same date directing respondent to return to the circuit court registry within five days any and all monies removed by respondent, or suffer possible penalties of criminal contempt.

c. Respondent did not notify [B] of his improper removal of the funds until his letter of July 4, 1984, and, in fact, took steps to conceal his misconduct from [B] prior to said letter.

15. On or about July 11, 1984, respondent issued and forwarded a check in the amount of $50,000 from his special escrow account to the circuit court registry in partial compliance with the July 6, 1984, order.

16. On or about July 17, 1984, plaintiff(s) in the civil action filed an additional motion to cite respondent for contempt, whereupon the [Z] Circuit Court set another hearing for July 23, 1984.

17. On or about July 23, 1984, respondent issued and forwarded another check from his special escrow account in the amount of $101,170.20 to the circuit court registry in further compliance with the July 6, 1984, order.

18. On or about August 22, 1984, respondent issued and forwarded to the court registry another check from his special escrow account for the remaining amount of principal due in the amount of $20,653.68. Throughout the period from June 12, 1984, through August 22, 1984, respondent held the subject funds inviolate.

19. As of the date of the stipulation, respondent still maintained interest earned on the funds held in his special escrow account in an amount in excess of $900. Respondent did take formal action in early January, 1985, to seek insructions from the circuit court regarding repayment of said interest to the court registry.

20. On or before August 16, 1984, respondent was charged by the [Z] State Attorney's Office with a single count of uttering a forged instrument (relating to the removal of funds from the First National Bank of [C].)

a. An information was thereupon filed by the [Z] State Attorney for the aforementioned single court of uttering a forged instrument.

b. On November 26, 1984, respondent entered a nolo contendere plea to the uttering charge.

c. By order dated January 3, 1985, Judge [A] on the [    ] County, [Z] Circuit Court withheld adjudication of guilt and imposition of sentence in respondent's criminal case.

d. Although adjudication of guilt was withheld, Judge [A] placed respondent on probation for a period of five years upon terms and conditions which included:

(i) Respondent must serve one hundred hours of community service each year of his probation.

(ii) Probation was to be transferred to Pennsylvania.

(iii) Violation of any of the conditions of probation may cause the circuit court to revoke respondent's probation, adjudge him guilty and impose any sentence which might have originally been imposed.

21. There has been no formal resolution of the motion to cite respondent for contempt filed on or about July 17, 1984, by plaintiff(s) in the civil action.

22. In effect at the time of respondent's removal of funds from the [Z] bank accounts were the following sections of the [Z] Statutes ([Z] Stat., 1983):

a. "Subsection 831.01 FORGERY — Whoever falsely makes, alters, forges or counterfeits a public record or a certificate, return or attestation of any clerk or register of a court, public register, notary public, town clerk or any public officer, in relation to a matter wherein such certificate, return or attestation may be received as a legal proof, or a charter, deed, will, testament, bond, or writing obligatory, letter of attorney, policy of insurance, bill of lading, bill of exchange or promissory note, or an order, acquittance, or discharge for money or other property, or an acceptance of a bill of exchange or promissory

note for the payment of money, or any receipt for money, goods or other property, or any passage ticket, pass or other evidence or transportation issued by a common carrier, with intent to injure or defraud any person shall be guilty of a felony of the third degree, punishable as provided in subsection 75.082, subsection 775.083, or subsection 775.084."

b. "Subsection 831.02 Uttering Forged Instruments — Whoever utters and published as true a false, forged or altered record, deed, instrument or other writing mentioned in subsection 831.01 knowing the same to be false, altered, forged or counterfeited, with intent to injure or defraud any person, shall be guilty of a felony of the third degree, punishable as provided in subsecton 775.082, subsection 775.083 or subsection 775.084."

c. Subsection 775.082 Penalties

* * *

3. A person who has been convicted of any other designated felony may be punished as folows:

* * *

d. For a felony of the third degree, by a term of imprisonment not exceeding five years."

23. The evidence clearly and convincingly establishes that respondent possessed the requisite intent to injure or defraud within the meaning of the aforementioned [Z] criminal statutes when he placed [B]'s purported signature on the subject checks and uttered same to the [Z] banks for the purchase of cashiers' checks.

24. Inconvenience, prejudice and harm have resulted to the courts and others because of respondent's misconduct.

25. By order of the [ ] County, [Z] Circuit Court, the period of respondent's probation was terminated early.

## III. DISCUSSION

Given the stipulation to the offense underlying the plea of nolo contendere, and the forthright admission of both parties that some form of public discipline is appropriate, the Board must determine whether any prejudicial error resulted from the admission of the plea of nolo contendere; the admission of a letter directed to Judge [A] of the [Z] Circuit Court; or, the admission of the two previous informal admonitions.

The hearing committee admitted the plea of nolo contendere into evidence, but refused to make it conclusive. By doing that, the hearing committee provided basis for the consideration of the underlying offense. The underlying offense was *admitted* by stipulation and accordingly, the board finds no prejudice accruing to the respondent whatsoever.[1]

Somewhat more troublesome is respondent's contention that two previous informal admonitions administered to him should not have been admitted for the purpose of determining the type of discipline to be imposed. Under section 89.151(9) of the Rules of the Disciplinary Board, any previous discipline administered to a respondent appears to be admissible in order to determine the appropriate discipline in the pending proceedings. However, section 93.102 of the Rules of the Disciplinary Board governs the confidentiality of disciplinary proceedings.

---

1. Had the underlying offense not been admitted by stipulation, and if petitioner had failed to prove the underlying offense, it is conceivable that the admission of a plea of nolo contendere which did not result in an adjudication of guilty, could have been prejudicial. But that is not the case herein.

That rule outlines the specific exceptions to confidentiality. Private discipline, of which informal admonitions are certainly a part, would only become public under the enumerated exceptions. A subsequent disciplinary infraction is not one of those exceptions. The respondent therefore contends that the admission of his two previous informal admonitions into the dispositional phase of the committee hearing was error and prejudiced him. The board does not agree.

First, when this question has come before the board in the past, it has been determined that the commission of a subsequent disciplinary infraction waives the confidentiality provided for in Rule 93.102, and allows even private discipline to be admissible in the dispositional stage under Rule 89.151. See In Re Anonymous, No. 1 D.B. 76, 4 D.&C.3d 792 at 796 (1977); In Re Anonymous, No. 12 D.B. 79, 14 D.&C.3d 388 at 402; and, In Re Anonymous, No. 13 D.B. 80, 20 D.&C.3d 470 at 476-77 (1981).

In addition, when the board reviewed the two previous informal admonishments in this matter, it found them to be not even closely related to the type of offense charged herein. The board finds that the discipline recommended by the hearing committee is appropriate, and that conclusion is fully supported by the offenses stipulated to by respondent in the present proceeding.

Finally, respondent has contended that the admission of a letter he authored and directed to Judge [A] in the [Z] criminal proceeding in which he admitted the gravity of his offense, was prejudicial. Again, the board cannot agree. The offense is serious on the admitted facts in the stipulation.

Accordingly, the board enters the following recommendation.

## IV. RECOMMENDATION

That respondent be suspended from the practice of law for a period of six months, and be ordered to pay the costs of this proceeding.

Ms. Heh did not participate in the adjudication.

## ORDER

NIX, *C. J.*, And now, this July 28, 1986, upon consideration of the report and recommendation of the Disciplinary Board dated May 22, 1986, it is ordered that [respondent] be and he is suspended from the Bar of the Commonwealth for a period of six months, and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.